UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

JORDAN LAWRENCE LESTER,

          Plaintiff,

   -vs-

CAROLYN W. COLVIN, Commissioner of
Social Security,

          Defendant.

**DECISION and ORDER
No. 12-CV-0143(MAT)**

─────────────────────────────────

## I.   Introduction

Represented by counsel, Jordan Lawrence Lester ("Plaintiff"), brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Procedural History

Plaintiff's mother, Camille Lester, filed an application for SSI child's benefits on Plaintiff's behalf on June 24, 2009, alleging that Plaintiff was disabled due to attention deficit

─────────────────

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

hyperactivity disorder ("ADHD"). T. 153-55, 180.[2] The initial application was denied, and Ms. Lester requested a hearing before an Administrative Law Judge ("ALJ"). T. 73-75. Plaintiff had his 18th birthday on March 30, 2010, while he awaited his hearing. T. 43.

On March 29, 2011, a hearing was conducted by telephone with Plaintiff, his mother, and his attorney present. T. 19-42. On April 7, 2011, the ALJ issued a 16-page decision determining that Plaintiff was not eligible for SSI under either the standard applied for children or that for adults. T. 44-62. The ALJ's determination became the final decision of the Commissioner on December 15, 2011, when the Appeals Council denied Plaintiff's request for review. T. 1-3. This action followed. Dkt. #1.

Now pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##5, 6. For the reasons that follow, the Commissioner's motion is granted, and Plaintiff's motion is denied.

## III. Factual Background

Plaintiff, born March 30, 1992, was 17 years old on the date of his filing for SSI benefits and 18 years old on the date of his hearing. T. 21, 51.

---

[2]  References to "T.___" refer to the pages of the administrative transcript, submitted as a separately bound exhibit in this action.

**A.   Medical Evidence**

**1.   Plaintiff's Providers**

Plaintiff was evaluated by Mark Zali, school psychologist, on December 5, 2007 when Plaintiff was in the 9th grade. Zali noted that Plaintiff was classified as "Emotionally Disturbed," and took Ritalin for ADHD. Plaintiff's composite, verbal, and nonverbal IQ scores were within Average range. T. 310. At that time, Plaintiff was failing most of his courses, required assistance with organization, task completion, and had difficulty concentrating. T. 308-311. Zali recommended a change in classification to "Other Health Impairment" to reflect Plaintiff's ADHD diagnosis. T. 311-12.

Kimberly Jackson, M.D., treated Plaintiff for the management of his ADHD. T. 327-28. Treatment notes dated November 18, 2010 show that Plaintiff was prescribed Strattera with "excellent and fair" medication compliance. T. 327. Dr. Jackson noted that while Plaintiff showed no improvement in the areas of social relationships, disruptive behavior, academic performance, independence, self-esteem, and safety in the community, he did show improvement in a multitude of other areas relating to focus, organization, attention, distractibility, and listening. T. 327.

### 2.    Consultative Examinations

Plaintiff underwent a consultative child psychiatric evaluation by Renee Baskin, Ph.D., on August 17, 2009, when he was 17 years old and entering the 9th grade. T. 284-87. He described difficulty falling asleep and insomnia. T. 284. General behavior was remarkable for losing his temper, being actively defiant, or noncompliant, as well as remarkable symptoms of hyperactivity. Id. Attention and concentration were intact. T. 285-86. Though intellectual functioning was estimated to be "below average range," Dr. Baskin observed that Plaintiff appeared to be a "fairly bright young man" whose psychiatric problems may have a negative impact on his ability to function academically. T. 286. Dr. Baskin concluded that Plaintiff would have minimal to no limitations being able to attend to, follow, and understand age appropriate directions, complete age appropriate tasks, ask questions and request assistance, and interact adequately with peers and adults. Plaintiff would have moderate limitations being able to adequately maintain social behavior. T. 286. Finally, she noted that Plaintiff's prognosis was "fair, given that [he] seek therapy," and recommended psychological treatment and educational services. T. 287.

A consultative pediatric examination was conducted by Samuel Balderman, M.D., on September 2, 2009, which indicates a 14-year history of migraine headaches and mental health issues. T. 288.

Frequency of headaches were two per month, lasting approximately two hours. Id. Diagnoses were headaches and learning disability and the examiner opined no physical limitations. T. 291.

A Childhood Disability Evaluation Form dated November 9, 2009 by State Agency non-examining review physician J. Meyer indicates severe impairments that do not meet the Social Security Listings. T. 295-96. Limitations were "none" or "less than marked" in every category. T. 297-98. Attributes were attention-seeking, immature, poor organization, and poor focus. T. 297.

**B.    Non-medical Evidence**

**1.    Hearing Testimony**

At the hearing, Plaintiff, who was 18 years old at the time, testified that he could not work because he had ADHD, for which he took medication and saw a doctor every 2-3 months. T. 28. He stated that he had trouble paying attention, and had difficulty with math, such as algebra, but could perform basic arithmetic and could use a checking account. T. 29-30. Plaintiff had no difficulties writing, watching television, and could remember and follow multiple-step instructions. T. 30. Plaintiff could use a computer, shop, travel by bus or subway, and help with household chores. T. 26-27. Socially, Plaintiff went to the movies and visited with friends. T. 26.

In addition to ADHD, Plaintiff testified that he suffered from migraine headaches, for which he took Excedrin. T. 41. He reported

his headaches to last 30 minutes and required him to rest for a few hours. T. 41-42.

Ms. Lester also testified at Plaintiff's hearing. She stated that Plaintiff had ADHD and Oppositional Defiant Disorder ("ODD") while growing up, had difficulty with authority, and that his condition had not really improved as he grew up, except that he had fewer tantrums. T. 34-35.

### 2.   School Records

During the  2006-07 school year, Plaintiff was enrolled in Special Education ("SE") classes for English Language Arts, Math, Social Studies, and Science. T. 222. He repeated the 9th grade three times and the 7th grade twice. T. 31, 256. Plaintiff had a history of poor academic achievement and behavioral issues due to distractibility, sleeping, poor organization, and difficulty focusing.  T. 256-57. Also noted in Plaintiff's school records were inconsistent social judgment and poor social skills. T. 257. Plaintiff was often suspended, absent, or tardy from school. T. 267-83.

An Individualized Education Program ("IEP") Annual Review for the 2009-10 school year indicates ongoing classification in SE as Emotionally Disturbed with additional diagnosis of ADHD. T. 303. The IEP notes the same difficulties and issues with Plaintiff's behavior, peer relationships, and academics as previously mentioned, and further notes that testing completed in December,

2007 yielded average results in decoding, calculation, and math fluency, and high-average fluency for reading. T. 301-07. The IEP states that Plaintiff needed to develop grade appropriate organization and study skills. T. 303.

### 3.   Vocational Expert Testimony

The ALJ obtained the testimony of James Newton, Vocational Expert ("VE").

The ALJ posited a hypothetical question to the VE, asking whether work existed in significant numbers for an individual who was restricted to work at all exertional levels that was simple, routine, repetitive; was in an environment free of fast-paced production requirements; involved only simple work-related decisions and routine workplace changes; and required only occasional interaction with the public and co-workers. T. 39. In response, the VE identified three unskilled medium jobs: hospital cleaner (50,000 positions nationally, 6,600 regionally); diet aid (186,000 positions nationally, 2,400 regionally); and cook helper (100,000 positions nationally; 6,000 regionally).

## IV.  The ALJ's Decision

Because Plaintiff was 17 at the time of his application and 18 at the time of the hearing, the ALJ evaluated Plaintiff's claim for SSI under both the child and adult standards.

**A.    Child Disability**

The statutory standard for children seeking SSI benefits based on disability is

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 1382c(a)(3)(C)(1).

In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. §§ 416.924. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" or combination of impairments. Third, the Commissioner must determine whether the impairment or combination of impairments correspond with one of the conditions presumed to be a disability by the Social Security Commission, that the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924.

In applying the tree-step process, the ALJ found that Plaintiff: had not engaged in substantial gainful activity since the application was filed; had the severe impairments of ADHD,

learning disability, and headaches; and did not have an impairment which functionally equaled the Listings because he did not have two marked limitations or one extreme limitation in the six domains of functioning. T. 51-55. The ALJ then determined that Plaintiff was not disabled. T. 19.

**B.   Adult Disability**

The Social Security Administration ("SSA") has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims for adults. 20 C.F.R. § 404.1520. Pursuant to this inquiry:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner considers whether the claimant has a "severe impairment" which significantly limits his ability to do basic work activity. If the claimant has such an impairment, the Commissioner considers whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1, Part 404, Subpart P. If the claimant does not have a listed impairment, the Commissioner inquires whether, despite the claimant's impairment, he has the residual functional capacity to perform his past work. If he is unable to perform his past work, the Commissioner determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 466-67 (2d Cir. 1982).

Applying this analysis, the ALJ found that: Plaintiff did not engage in substantial gainful activity since the date the application was filed; that Plaintiff continued to have the same

severe impairments, which did not meet the Adult Listings; Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations. Proceeding to step five of the sequential evaluation process, the ALJ relied on the VE testimony and found that jobs existed in significant numbers in the national economy that Plaintiff could perform. Therefore, the ALJ concluded that Plaintiff was not a disabled adult during the relevant period. T. 59-62.

## V.   General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S.

197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

-11-

## VI.  Discussion

### A.   Step 3 Assessment

Plaintiff first contends that the ALJ's determination that Plaintiff was not disabled prior to age 18 is not supported by substantial evidence. Pl. Mem. (Dkt. #5-1) at 9-12. Specifically, that the ALJ did not provide a rationale or cite to Listing 112.05(D) in his step three analysis. Id.

The Commissioner argues that the ALJ properly found that Plaintiff's mental impairment did not meet Listing 112.05(D), which pertains to mental retardation. Comm'r Reply Mem. (Dkt. # 12) at 1. The Court agrees.

The regulations state, in relevant part:

> Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning [and accompanied by] D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R. Part 404, Subpt. P, App. 1, § 112.05(D).

On the outset, Plaintiff's most recent Kaufman intelligence test ("KBIT-2"), administered on December 5, 2007, indicates an IQ composite score of 93, a verbal score of 92, and a nonverbal score of 96. T. 310. The ALJ therefore had no need to discuss Listing 112.05(D) because Plaintiff's IQ score did not fall within the parameters of 112.05(D).

Plaintiff claims that the ALJ should have discussed the variation between the current IQ test and a prior Wechsler Intelligence ("WISC-III") test administered in February, 2002, when Plaintiff was 9 years old. Pl. Mem. 11. The 2002 test revealed scores of 66 in verbal, 79 in performance, and 70 in full scale IQ. T. 308.

An ALJ may reject an IQ score as invalid where it is inconsistent with the record. See Lax v. Astrue, 489 F.3d 1080 (10th Cir. 2007). Here, the ALJ was free to disregard the 2002 WISC-III test because the evidence the record as a whole, including medical treatment notes, school records, and the Plaintiff's testimony, supports ADHD and learning disability, and is inconsistent with mental retardation. On the other hand, Plaintiff's 2007 KBIT-2 IQ score is more consistent with his daily activities such as performing household chores, shopping, and maintaining a checking account. Also significant is the fact that Plaintiff was never diagnosed with mental retardation. Accordingly, the ALJ's finding regarding the Listings is supported by substantial evidence.

**B.   Plaintiff's Credibility**

Plaintiff next contends that the ALJ's assessment of his credibility is not supported by substantial evidence because the ALJ "cherry picked" from the evidence and focused on those factors that supported his finding. Pl. Mem. 12-14.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see Social Security Ruling ("SSR") 96-7p, (July 2, 1996), 1996 WL 374186, at *7. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Secretary, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

Here, the ALJ summarized the Plaintiff's and his mother's testimony, as well as the objective medical evidence, and concluded that the Plaintiff's subjective symtomatology was not corroborated to the extent alleged. T. 53-60. Pursuant to 20 C.F.R. § 416.929(c)(3), the ALJ evaluated Plaintiff's activities of daily living (shopping, socializing, using a computer, watching movies, playing sports, and maintaining a checking account) and found that they were not limited. T. 53.

Regarding Plaintiff's headaches, the ALJ noted that Plaintiff was not under treatment and takes only over-the-counter medication and these facts undermined his assertion that his migraines limited his functioning. Id. Though Ms. Lester testified that her son had ODD and speech problems, those impairments were not diagnosed by a medical source and not supported elsewhere in the record. T. 54. Ms. Lester's claim that Plaintiff's symptoms had not improved over the years was contradicted by the treatment notes in the record. Id.

The ALJ's 16-page Decision belies Plaintiff's allegation of "cherry picking" the evidence to support a finding of no disability. The ALJ repeatedly acknowledged Plaintiff's academic and behavioral shortcomings and weighed that evidence against the remainder of the clinical findings, testimony, school records, and opinion evidence, all of which is generally consistent with mild limitations due to Plaintiff's ADHD and learning disability.  Thus,

-15-

the ALJ's analysis here fulfills SSR 96-7p's requirement that he carefully consider the rest of the record when making a credibility determination. See e.g., Marquez v. Colvin, 12 Civ. 6819, 2013 WL 5568718, at *15 (S.D.N.Y. Oct. 9, 2013) ("[T]he ALJ did not merely point to the conclusions of his own RFC assessment to support his credibility determination. Rather, he stated his conclusion after an exhaustive review of plaintiff's medical records and testimony.").

Accordingly, the Court finds that the ALJ's credibility determination is proper as a matter of law, and is supported by substantial evidence.

### C. Listing of Impairments

Next, Plaintiff contends that the ALJ's determination that Plaintiff had less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others, was not supported by substantial evidence. Pl. Mem. 14-19.

To determine whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of the following six domains:

> (1) acquiring and using information; attending and completing tasks;
>
> (2) interacting and relating with others;
>
> (3) moving about and manipulating objects;
>
> (4) caring for yourself; and

(5) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

In making this assessment, the ALJ must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b). To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. 416.926a(d).

A child has a "marked" limitation in a domain when his impairment(s) interferes "seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). A child has an "extreme" limitation in a domain when her impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

### 1.   Acquiring and Using Information

In this domain, the ALJ considers how well a child acquires or learns information and how well he uses the information he has learned. 20 C.F.R. 416.926a(g). An adolescent between ages 12 and 18 should be able to: (1) use what he has learned in daily living situations without assistance; (2) comprehend and express both

simple and complex ideas; (3) should also learn to apply these skills in practical ways that will help him enter the workplace. 20 C.F.R. § 416.926a(g)(2)(v). Examples of a "marked" or "extreme" limitation in this domain include difficulty recalling important things learned in school the previous day and difficulty solving mathematics questions or computing arithmetic answers. 20 C.F.R. § 416.926a(3)(v), (iv).

Plaintiff argues that his placement in SE classes, poor test scores from February 15, 2008 in math and reading, and having had to repeat both 7th and 9th grade multiple times indicates "marked" limitations and that the ALJ did not attempt to obtain a functional assessment in this domain. Pl. Mem. 15-16. However, the ALJ did acknowledge that Plaintiff had repeated grades, and noted that one consultative examiner found that Plaintiff's psychiatric problems could affect his academic performance. T. 55.[3] The ALJ also noted Plaintiff's treatment records, which indicated improvement in attention, instructions, schoolwork, and organization. Id. Finally, the ALJ considered that in a non-academic setting, the Plaintiff demonstrated that he was able to use a computer for research, played guitar, and played sports. Id. Here, Plaintiff's school records, treatment records, the opinion of the consultative

---

[3] In his reply brief, Plaintiff argues that the ALJ failed to acknowledge this fact. Pl. Reply Mem. (Dkt. #11) at 3. The ALJ's Decision indicates that it was not only considered but explicitly mentioned in the discussion of this functional domain. T. 55.

examiner, and Plaintiff's testimony were all considered by the ALJ in making his determination and support his finding of less than marked limitations.

## 2.   Attending and Completing Tasks

The domain "[a]ttending and completing tasks" contemplates a child's ability to focus and maintain attention, "begin, carry through, and finish ... activities, including the pace at which [the child] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h). Adolescents should "be able to pay attention to increasingly longer presentations and discussions, maintain . . . concentration while reading textbooks, and independently plan and complete long-range academic projects." Children of Plaintiff's age should also "be able to organize [his] materials and to plan [his] time in order to complete school tasks and assignments. In anticipation of entering the workplace, [he] should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting." Examples of difficulties children might have in this domain are: (1) easily startled or distracted; (2) slow to focus on or complete activities of interest; (3) repeatedly sidetracked from activities or frequently interrupts others; (4) easily frustrated; and (5) requires extra supervision to remain engaged in an activity.

The ALJ found less than marked limitations in this domain, but noted that Plaintiff's school records showed poor attention and difficulties in completing tasks. T. 56. In considering the evaluation by consultative examiner Dr. Baskin, the ALJ noted that Plaintiff's attention and concentration were intact. T. 56, 286. Dr. Balderman observed that Plaintiff had "normal attention for his age," and Dr. Jackson's report indicated that Plaintiff's ability to pay attention had improved. T. 285, 289. Plaintiff testified that he could remember and follow multi-step instruction, had no trouble watching television programs that interested him, and used a computer to research topics of interest. T. 25, 30. Based on the evidence in the record, the ALJ reasonably concluded that while Plaintiff had a limitation in this domain, it was less than marked. T. 56.

### 3.   Interacting and Relating with Others

In the domain of "interacting and relating with others," the ALJ must "consider a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others." SSR 09-5p, 2009 WL 396026, at *2 (S.S.A. Feb. 17, 2009). Examples of limited functioning in this domain include: (1) not having close friends within age group; (2) being withdrawn, overly anxious, or fearful of meeting new people; (3) difficulty playing games or sports with

rules; (4) difficulty communicating with others; and (5) difficulty speaking intelligibly or with adequate fluency.

The ALJ acknowledged Plaintiff's behavioral issues in school and went on to consider Plaintiff's testimony that he had friends with whom he went to movies, as well as his statements to consultative examiner Dr. Baskin that he had good peer relations and enjoyed socializing with friends and family. T. 26, 57, 286. In an SSA "Function Report" questionnaire, Ms. Lester stated that Plaintiff had no difficulties with social activities or behaving with others. T. 172. According to an IEP report, Plaintiff interacted well one-on-one. T. 257. Both Dr. Baskin and Dr. Balderman noted that Plaintiff related in an age-appropriate manner. T. 257, 289. Plaintiff's IEP stated that though Plaintiff behaved "immature" and "attention-seeking" at times, he was also observed to "speak[] very well." T. 257.

In light of the information contained in the record, substantial evidence supports the ALJ's conclusion that while Plaintiff had a limitation in interacting and relating with others, the limitation was not marked. T. 57.

In summary, the Court finds that the ALJ's functional equivalence assessments are supported by substantial evidence.

### D.   RFC Determination

Plaintiff next challenges the ALJ's RFC determination relating to the period after Plaintiff turned 18. According to Plaintiff,

the ALJ failed to apply the appropriate legal standard because he did not follow the "special technique" relative to mental impairments as set forth in 20 C.F.R. § 404.1520a. Pl. Mem. 20. The Commissioner concedes that ALJ did not employ the special technique, but submits that the ALJ implicitly evaluated the four broad factors when he discussed the six domains of functioning. Comm'r Reply. Mem. 5.

Under the special technique for assessing mental impairments, an ALJ considers four broad functional areas: daily living, social functioning, concentration, persistence or pace, and episodes of decomposition. 20 C.F.R. § 404.1520a(c)(3). If the limitations in the first three areas are rated mild or less, and there are no episodes of decompensation, the impairment will not be found severe. 20 C.F.R. § 404.1520a(d)(1). Notably, the omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in his residual functional capacity (RFC) determination. See Tryon v. Astrue, No. 10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb.7, 2012); see also Plante v. Astrue, No. 11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec.13, 2011). Such is the case here.

The ALJ found that since attaining age 18, Plaintiff continued to have the severe impairments of ADHD, learning disability, and headaches. Having found that Plaintiff did not meet a Listing, the

ALJ then went on to determine Plaintiff's RFC. In doing so, he found that Plaintiff had no physical limitations and could work at all exertional levels. T. 26-27, 60, 289, 291, 327-29. The ALJ next evaluated Plaintiff's mental conditions and concluded that he could perform some types of work despite his impairments. In support of his RFC finding, the ALJ relied upon the opinion of Dr. Baskin, who assessed that Plaintiff had no or minimal limitation in attending to, following, and understanding age-appropriate directions; completing age-appropriate tasks; asking questions and requesting assistance in an age-appropriate manner; being aware of danger and taking needed precautions; and interacting adequately with peers and adults. T. 54, 286. She opined that Plaintiff had only a moderate limitation in adequately maintaining social behavior, responding appropriately to changes in the environment, and learning in accordance with cognitive functioning. T. 286.

Relevant to concentration, the ALJ relied upon the report of Plaintiff's treating physician, Dr. Jackson, who noted that Plaintiff experienced an improvement in paying attention to details, sustaining attention to tasks, listening, following through on instructions, organizing tasks, distractibility, forgetfulness, fidgeting, and running about. T. 54, 327. He also relied upon Dr. Meyer's report, which supported no limitations or less than marked limitations in the six functioning domains.

Finally, the ALJ considered Plaintiff's activities of daily living and social functioning and found that they undermined his allegation of disability. Plaintiff was able to use a computer to research topics of interest, went shopping, went to movies with friends, visited with friends, traveled by walking, taking the bus, or subway, helped with household chores, and played the guitar and sports. T.25-27, 289. Plaintiff testified that he could read a couple of pages before losing focus, and that he could add, subtract, multiple, and divide, but could not perform algebra or count change at a store. T. 29. Plaintiff had a checking account with a balance at the time of the hearing. T. 30.

This evidence provides substantial support for the ALJ's finding that Plaintiff could perform simple, routine, and repetitive tasks. Although the ALJ did not conduct a function-by-function assessment, he did discuss Plaintiff's mental capabilities and work-related functions and limitations, and the RFC assessment is supported by substantial evidence. Accordingly, the ALJ's failure to employ the special technique is deemed harmless error. See Carrigan v. Astrue, 2011 WL 4372651, *7–8 (D.Vt.) (failure to conduct function-by-function assessment of mental capabilities harmless where ALJ's decision discussed the claimant's work-related functions and limitations and where substantial evidence supported RFC assessment), report and recommendation adopted, 2011 WL 4372494 (D. Vt. 2011); see also

Moore v. Astrue, 2013 WL 935855, *7-8 (N.D.N.Y. 2013) (ALJ properly concluded plaintiff's depression was non-severe where plaintiff "failed to present any medical evidence demonstrating mental impairments ... [and thus] failed to establish a colorable impairment[;] ... to the extent that any failure to comply with the mechanics of the special technique could be found, it is harmless error").

In light of the determination that the ALJ's RFC assessment is supported by substantial evidence, the Court need not delve into Plaintiff's final argument that the VE's testimony was invalid because it relied upon a "faulty RFC which did not completely and accurately describe the Plaintiff's limitations." Pl. Mem. 22.

For all of the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence.

## VII. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. #5) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. #6) is granted. The Complaint is dismissed in its entirety with prejudice

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     August 6, 2014
           Rochester, New York